UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>KELLI R. HARDY<br><br>         Debtor.<br><br>――――――――――――<br><br>KELLI R. HARDY<br><br>         Plaintiff,<br><br>   v.<br><br>UC HEALTH, LLC<br><br>         Defendant. | :<br>:<br>:<br>:<br>:<br><br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 1:17-12002<br><br>Chapter 13<br><br>Judge Buchanan<br><br><br><br>Adv. Proc. No. 1:18-ap-01075<br><br>**Motion to Approve Settlement** |

Plaintiff Kelli R. Hardy and Defendant UC Health, LLC ("UC Health"), have entered into a Settlement Agreement resolving, subject to conditional class certification and Court approval, all the claims of the parties. Pursuant to Rules 7023[1] and 9019 of the Federal Rules of Bankruptcy Procedure, the parties jointly move the Court for an order for: (1) conditional certification of Settlement Class; (2) preliminary approval of Settlement Agreement subject to a fairness hearing; (3) preliminary approval of remedial plan; (4) approval of Notice and Notice Plan; (5) appointment of Class Representative and Class Counsel; and (6) setting a date for a hearing on the fairness, reasonableness, and adequacy of the proposed Settlement Agreement pursuant to Rule 23(e).

A Memorandum in Support of this Motion is attached, along with a proposed agreed Preliminary Approval Order granting requested relief (Exhibit A); Notice Plan and Notice to

---

[1] Rule 7023 of the Federal Rules of Bankruptcy Procedure incorporate class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure into bankruptcy adversary proceedings. *See* Fed. R. Bankr. P. 7023.

Settlement Class Members (Exhibit B and its Attachment 1), Declarations of counsel (Exhibits

C & D), and a copy of the proposed Settlement Agreement (attached as Attachment 2 to the

Declaration of Christian A. Jenkins).

Respectfully submitted,

| | |
|---|---|
| /s/ Christian A. Jenkins | /s/ Joseph M. Esmont |
| Christian A. Jenkins (0070674) | Joseph M. Esmont (0084322) |
| Paul J. Minnillo (0065744) | BAKER & HOSTETLER LLP |
| MINNILLO & JENKINS Co., LPA | Key Tower |
| 2712 Observatory Avenue | 127 Public Square, Suite 2000 |
| Cincinnati, Ohio 45208 | Cleveland, Ohio 44114 |
| Tel:  (513) 723-1600 | Tel:  (216) 621-0200 |
| Fax:  (513) 723-1620 | Fax:  (216) 696-0740 |
| cjenkins@minnillojenkins.com | jesmont@bakerlaw.com |
| pjminnillo@minnillojenkins.com | |
| | Counsel for UC Health, LLC |
| Attorneys for Plaintiff | |

## MEMORANDUM IN SUPPORT

Plaintiff Kelli R. Hardy and Defendant UC Health, LLC ("UC Health"), following

extensive arms' length negotiations, have entered into a Settlement Agreement[2] that would resolve

all claims raised in this proceeding.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure

and Rule 9019 of the Federal Rules of Bankruptcy Procedure, the parties jointly submit the

Settlement Agreement for preliminary approval by the Court.   By this Motion, the parties

respectfully submit that the Court should grant preliminary approval to the Settlement Agreement,

approve the notice to class members, and schedule the fairness hearing for final approval.   For the

reasons explained herein and in order to effectuate the compromise, the Court should:

(1) conditionally certify an injunctive relief Settlement Class under Rule 23(b)(2);

(2) preliminarily approve the Settlement Agreement as fair, reasonable, and adequate;

(3) preliminarily approve a plan for remedial efforts; (4) approve the proposed Notice and Notice

Plan; (5) appoint the Plaintiff as the Class Representative for a proposed Settlement Class and

Plaintiff's Counsel as Class Counsel; and (6) schedule a final approval/fairness hearing under Rule

23 no earlier than 120 days from the date preliminary approval is granted.

## I.    NATURE OF THE CLAIM AND HISTORY OF DISPUTE[3]

This case involves proofs of claim filed by UC Health in bankruptcy cases in the Southern

District of Ohio, from June 3, 2011 until preliminary approval of the proposed settlement.   Hardy,

on behalf of herself and all others similarly situated, alleges that UC Health and its subsidiary

organizations have for several years routinely attached unredacted medical bills containing both

personal health information and confidential personally identifiable information such as account

---

[2] Unless otherwise noted, terms used herein have the same meaning as those terms are defined in the
Settlement Agreement. (Ex. C, Attachment 2).
[3] Except as otherwise noted, the Background section is supported by the case docket in this adversary and
the core proceedings.

numbers and other identifiers to proofs of claim filed in Bankruptcy cases.  Hardy contends that

she and the proposed Settlement Class are entitled to injunctive relief to restrict public access to

their personal health information and personally identifiable information.  Beginning from the time

that UC Health first learned of the potential of filing unredacted proofs of claim, UC Health has

done extensive investigation and believes that from June 3, 2011 to April 20, 2018, UC Health has

filed 279 proofs of claim that were not redacted in the Southern District of Ohio.  The relevant

facts are a matter of public record.

### A.    **Procedural History and Discovery**

Hardy filed for relief under Chapter 13 of the U.S. Bankruptcy Code.  UC Health is a

creditor of Hardy, holds a claim against Hardy from the provision of medical goods and services,

and filed a proof of claim in Hardy's bankruptcy proceeding.

After conducting a significant amount of factual investigation, on December 12, 2018,

Hardy commenced this class action lawsuit (the "Ohio Action"), by and through Class Counsel,

on behalf of her and others she claims are similarly situated regarding disclosure of personal health

information or personally identifiable information in proofs of claim that UC Health filed in their

bankruptcy cases. Though no formal discovery has occurred, the facts relevant to this matter are

found in the filed proofs of claim and are all of public record and available through the PACER

system. As to those facts, Class Counsel has performed a diligent investigation of UC Health's

filed proofs of claim and learned the facts of this matter.  (Declaration of Christian Jenkins ¶ 7).

UC Health also performed extensive work to learn the facts relevant to the Ohio Action.

With substantial and considerable assistance from the Chapter 13 Trustee, and following an

extensive review of UC Health's own records, UC Health has prepared a spreadsheet that includes

every filed proof of claim with unredacted medical bills attached and the respective debtors'

(putative Settlement Class Members) names and addresses.  (Ex. D).  There have been 279 such

proofs of claim filed by UC Health in the Southern District of Ohio.  (Ex. D).  Other than the

Complaint in the Ohio Action, however, UC Health has received no notice that its filing of these

proofs of claim with the Court has resulted in any pending or threatened claims or allegations that

anyone suffered any damages from the disclosure of personal health information or personally

identifiable information.  (Ex. D).  UC Health has represented and warranted that fact to Plaintiff.

(See Settlement Agreement p. 2).

### B.   Proposed Class Counsel

Class Counsel have significant experience in prosecuting class actions and complex cases,

including class actions regarding privacy claims against Ohio Secretary of State Ken Blackwell for

publishing social security numbers on the internet and what was then the largest settlement ever

under the federal Privacy Act for claims against the Veterans Administration. (Ex. C, Att. 1).  In

addition, Class Counsel recently served as class counsel in a very similar case involving another

health care provider in Southern Ohio that engaged in the same conduct as UC Health in this case.

(See S.D. Ohio Bankr. Case No. 3:17-ap-03012).  They are committed to zealously representing

the Plaintiff and the interests of the Settlement Class, and have done so to date through their

investigation of the facts underlying this matter, their identification of the factual and legal issues,

the drafting and filing of the pleadings, the negotiation of a settlement with terms favorable to all

Settlement Class Members, and the presentation of this matter to the Court for purposes of

preliminary approval.  (Ex. C).

### C.   The Negotiated Settlement

Armed with comprehensive knowledge of the facts in the Ohio Action, counsel for Hardy

and UC Health engaged in discussions regarding the possibility of settlement beginning in January.

(Exs. C & D). These discussions resulted in the parties reaching a compromise on March 20, 2019,

with the terms of the compromise memorialized in the Settlement Agreement.  (Ex. C Att. 2). As

stated in the Settlement Agreement, UC Health denies all claims asserted against it in the Ohio

Action; denies that class certification would be appropriate if the cases were litigated rather than

settled; denies all allegations of wrongdoing and liability; and denies that anyone was harmed by

the alleged relevant conduct. (Settlement Agreement at 1-2. Hereinafter, all citation to the

Settlement Agreement will be "S.A. § XX.") Nevertheless, UC Health desires to settle the

Released Claims on the terms and conditions set forth in the Settlement Agreement because UC

Health believes the Settlement Agreement constitutes an equitable resolution of Plaintiff's claims

and for the purpose of avoiding the burden, expense, risks and uncertainty of continuing the

proceedings in the Ohio Action, without in any way acknowledging any wrongdoing, fault,

liability, or damages to Plaintiff or the Settlement Class or conceding that it engaged in the alleged

conduct or the truth of any other allegations in any complaint filed in the Ohio Action. (S.A. at 1.)

The parties have identified a settlement class:

> The Settlement Class shall consist of all individuals whose personal health
> information or personally identifiable information was included in a proof of claim
> filed by UC Health in this Court at any time from June 3, 2011, up to and including
> the date the Court enters the Preliminary Approval Order.

(S.A. § III.A.1.)

Plaintiff and Class Counsel have concluded, based on their investigation, that this

Settlement Agreement provides fair, reasonable, and adequate relief to the Settlement Class, and

is in the best interests of the Settlement Class, after having considered (a) the benefits that the

Settlement Class will receive from the settlement of the Ohio Action, (b) the attendant risks of

continuing the Ohio Action, and (c) the desirability of permitting the settlement to be consummated

on the terms set forth in the Settlement Agreement, subject to approval of the Court. (*See* Ex. C

Att. 2). The Parties are willing to enter into the Settlement Agreement to settle the claims of

Plaintiff and the Settlement Class because of, among other reasons, the attendant expense, risks, difficulties, delays, and uncertainties of continued litigation.  (Ex. C ¶ 8).

## II.      MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

### A.      Injunctive Relief and Plan for Remedial Efforts

UC Health agrees to enter into a permanent injunction that provides the following remedial plan and relief.  First, UC Health will fully redact all personal health information and personally identifiable information from all proofs of claim and supporting documents before filing in Bankruptcy Court from the Effective Date of the Settlement Agreement forward.  (S.A. § V.A.1.) Second, UC Health will open a separate "miscellaneous" case and therein ask the Court to permanently restrict public access to all unredacted proofs of claim it filed in the Court that include or may include personal health information or personally identifiable information from June 3, 2011 to present.  (S.A. § V.A.2.)  Third, in that miscellaneous matter, UC Health will fully and promptly comply with all orders of the Court regarding the filing of redacted proofs of claim in restricted-access cases and pay all fees and costs associated therewith.  (S.A. § V.A.3.)

### B.      Class Notice of Settlement Agreement

As stated above, with the Trustee's assistance and through an extensive review of UC Health's records, UC Health prepared a comprehensive spreadsheet of all bankruptcy cases in which it filed proofs of claim with unredacted medical bills attached, including the debtors' names and addresses.  The Settlement Agreement contemplates certification of a class comprised of Settlement Class Members under Federal Rule of Civil Procedure 23(b)(2).  (See S.A. §§ II.A., III.A., III.B.1, IV.A., V.)  As to the Settlement Agreement, the parties recommend to the Court the Notice and Notice Plan attached as Exhibit B to the Settlement Agreement.  Subject to Court approval, within 30 days of entry of a Preliminary Approval Order, UC Health's Counsel will provide Settlement Class Members individual mailed notice of the Settlement and objection and

opt out deadlines pursuant to the Notice Plan.  The proposed Notice, which is attached as Exhibit

B, states the substantive terms of the Settlement Agreement, provides notice of the Final Approval

Hearing Date, provides notice of the right to and procedures by which Settlement Class Members

may opt out and object to the Settlement Agreement or the attorneys' fee application.

### C.    Costs, Expenses, and Attorneys Fees

Class Counsel will apply to the Court for reimbursement by UC Health of their reasonable

attorney fees, costs, and expenses, and any contribution award for the Class Representative.  (S.A.

§ VII.A.)  UC Health has agreed to the application for up to $25,000.00 and will not oppose a

request for a contribution award for the Class Representative of up to $1,000.00. (S.A. § VII.C.)

There are no undisclosed agreements for compensation to either the proposed Class Representative

or proposed Class Counsel and attorneys' fees were not negotiated until after an agreement was

reached.  (Ex. C ¶ 6).

## III.    THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR SETTLEMENT PURPOSES

> Prior to review of the Rule 23(a) requirements, "a court must first consider whether a precisely defined class exists and whether the named plaintiff is a member of the proposed class." *Mann v. Acclaim Financial Servs., Inc.,* 232 F.R.D. 278, 282 (S.D. Ohio 2003). *See also Violette* [*v. P.A. Days, Inc.*], 214 F.R.D. [207,] 212 [(S.D. Ohio 2003)]. "Key elements to defining a class include: '(1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way, and (2) facilitating a court's ability to ascertain its membership in some objective manner.' " *Violette,* 214 F.R.D. at 212 (further citation omitted).

*In re ABMD Ltd.*, 439 B.R. 475, 482 (Bankr. S.D. Ohio 2010).  Here the Parties seek certification

of the Settlement Class, which consists of "all individuals whose personal health information or

personally identifiable information was included in a proof of claim filed by Defendant in this

Court at any time from June 3, 2011, up to and including the date the Court enters the Preliminary

Approval Order."  This Settlement Class is precisely defined and limited to a particular time frame,

and it is readily determinable (and has been precisely determined) who those Settlement Class

members are.

### A.   Rule 23(a) Allows Certification for Settlement Purposes

In order for one or more litigants to represent all parties in a class, four prerequisites must

be met: "(1) the class [must be] so numerous that joinder of all members is impracticable, (2) there

[must be] questions of law or fact common to the class, (3) the claims or defenses of the

representative parties [must be] typical of the claims or defenses of the class, and (4) the

representative parties [must] fairly and adequately protect the interests of the class."  Fed. R. Civ.

P. 23(a).

The "sheer number of potential litigants in a class, especially if it is more than several

hundred, can be the only factor needed to satisfy Rule 23(a)(1)."  *Bacon v. Honda of Am. Mfg.,*

*Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citing 1 Herbert B. Newberg & Alba Conte, *Newberg on*

*Class Actions,* § 3:5, at 243–45 (4th ed. 2002)).  Here, there are 279 Settlement Class Members, a

number well beyond the point that joinder would be feasible.  The numerosity requirement is met.

To satisfy the commonality requirement of Rule 23(a)(2), there must be a single issue

common to all members of the class, that common question must concern some essential element

of class members' claims, and that common question must generate common answers to the class.

*In re Biery*, 543 B.R. 267, 282-83 (Bankr. E.D. Ky. 2015) (*quoting and citing Wal–Mart Stores,*

*Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)).  Here, the common

question is whether a UC Health practice of filing unredacted proofs of claim violates the

Settlement Class Members' privacy interests in the personal health information or personally

identifiable information in those proofs of claim.  The answer does not vary.  The commonality

requirement is met.

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-CV-1071, 2016 WL 1553459, at *8 (S.D. Ohio Apr. 18, 2016) (*quoting In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citing Newberg § 3:3, at 3-76)). Here, Hardy's injury and theory of recovery is typical of and matches the Settlement Class Members' injuries and theories of recovery—UC Health's alleged wrongdoing is factually the same. Hardy's interests align with each Settlement Class Member. By pursuing her own interests, Hardy advances the Settlement Class Members' interests. The typicality requirement is met.

Rule 23(a)(4) requires adequate representation.

> The adequacy inquiry has two prongs requiring the court to determine: 1) that class counsel is qualified, experienced and generally able to conduct the litigation; and 2) that the class representatives have common interests with the unnamed members of the class.

*In re ABMD Ltd.*, 439 B.R. at 486 (*citing Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 562-63 (6th Cir. 2007). " 'The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.' " *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 429–32 (6th Cir. 2012) (*quoting Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L.Ed.2d 689 (1997)).

As to the first prong, the Class Counsel are well qualified, have extensive class action experience, including privacy claim class actions, and have vigorously prosecuted the interests of the Settlement Class to date. As to the second prong, there are no conflicts of interest. While very few other debtors, despite knowledge of the proof of claim filed in their respective bankruptcy proceedings, have sought any relief as to the disclosure of their personal health information or personally identifiable information, Hardy has. And Hardy, like every Settlement Class Member,

has an interest in restricting access to that information.  Hardy, as the Class Representative, will

fairly and adequately protect the interests of the class.

### B.    Rule 23(b)(2) Permits Certification for Settlement Purposes

Rule 23(b)(2) "permits certification when the defendant 'has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

relief is appropriate respecting the class as a whole.' "  *Gooch*, 672 F.3d at 427.

> "All of the class members need not be aggrieved by ... [the] defendant's conduct in
> order for some of them to seek relief under Rule 23(b)(2). What is necessary is that
> the challenged conduct or lack of conduct be premised on a ground that is
> applicable to the entire class." 7AA Wright & Miller, [*Federal Practice &
> Procedure Civil*], § 1775. "It is sufficient if class members complain of a pattern or
> practice that is generally applicable to the class as a whole. Even if some class
> members have not been injured by the challenged practice, a class may nevertheless
> be appropriate." *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998). "The key to
> the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy
> warranted—the notion that the conduct is such that it can be enjoined or declared
> unlawful only as to all of the class members or to none of them.' " *Wal–Mart,* 131
> S.Ct. at 2557 (quoting [Richard A.] Nagareda, [*Class Certification in the Age of
> Aggregate Proof*, 84 N.Y.U. L. Rev. [(April 2009)], at 132).

*Gooch at* 428.

Here, each and every proposed Settlement Class Member is a debtor in whose bankruptcy

case UC Health has filed a proof of claim that allegedly contains personal health information or

personally identifiable information.   While no Settlement Class Member except Hardy has

complained or claimed injury by UC Health's practice of filing proofs of claim that potentially

include personal health information or personally identifiable information, the challenged practice

is applicable to the entire Settlement Class.  The relief sought restricts public access to those proofs

of claim and the information contained therein.  Because the act complained of is uniform to all,

class certification for settlement purposes is appropriate.

### IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    Standard for Preliminary Approval of Class Settlement

"[T]he law generally favors and encourages the settlement of class actions." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *2-3 (S.D. Ohio Aug. 18, 2009) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981)).  Approval of a class action settlement involves a three-step process:

1.    The Court must preliminarily approve the proposed settlement;

2.    Members of the class must be given notice of the proposed settlement; and

3.    A fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable and adequate.

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006) (citing Fed. R. Civ. P. 23(e); *Williams v. Vukovich,* 720 F.2d 909, 920-21 (6th Cir. 1983); *Bronson v. Bd. of Educ.,* 604 F. Supp. 68, 71 (S.D. Ohio 1984)).

At the preliminary approval stage, the court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation. *See Ohio Public Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982). Factors that guide the preliminary inquiry as fairness, reasonableness, and adequacy include: (1) the amount of discovery engaged in by the parties; (2) the likelihood of success on the merits (3) the risk of fraud or collusion; (4) the complexity, expense, and likely duration of the litigation; (5) the opinions of class counsel and class representatives; and (6) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). In considering these factors, the court "is not to decide whether one side is right . . . .  The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632. The settlement agreement should be preliminarily approved if it (1) "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys," and (2)

"appears to fall within the range of possible approval." *In re Inter–Op Hip Prosthesis Liab. Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001).

### B.      **The Settlement Agreement Is Fair, Reasonable, and Adequate.**

This Court should grant preliminary approval because an analysis of the above factors demonstrates that the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate to the Settlement Class.

### *1.      The Parties Have Conducted Extensive and Adequate Investigation of the Claims.*

"To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *5 (S.D. Ohio Aug. 19, 2009) (citations omitted).

The parties have conducted comprehensive investigations and, with the assistance of the Chapter 13 Trustee, have combed the public record and UC Health's records. This extensive effort taken over a period of nearly three months is believed to have resulted in the identification of all putative class members and their addresses, and identifies every proof of claim that potentially discloses personal health information or personally identifiable information. There have been 279 such proofs of claim filed by UC Health. But other than this Ohio Action, UC Health has represented and warranted to Plaintiff that it knows of no other allegations that anyone suffered any damages from the disclosure of personal health information or personally identifiable information.

To date, the parties have engaged in far-reaching investigations and have vigorously litigated this Ohio Action enabling a full determination as to the likelihood of success on class certification and the merits.

### 2.    *Likelihood of Success on the Merits*

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009) (quoting *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). "Thus, in assessing the Settlement, the Court should balance the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits." *Id*. (citations omitted).

While Hardy is confident she will succeed on the merits of her claims against UC Health, she acknowledges that her claims would face potential challenges based on proceedings in other districts.  For example, in *In re Branch*, 569 B.R. 657, 671 (Bankr. E.D.N.C. 2017), the court determined that the privacy policy posted on healthcare provider's website created no duty to plaintiff and dismissed plaintiff's negligence claim.  Likewise, UC Health desires to settle for the purpose of avoiding the burden, expense, risks and uncertainty of continuing these proceedings, including the possibility of a contempt motion under Rule 9037.

These factors, and others such as the general risks inherent in any litigation, contribute to the inevitable balancing of risks that all parties must perform when engaging in settlement negotiations.

### 3.    *No Risk of Fraud or Collusion Exists.*

No risk of fraud or collusions exists because this Settlement Agreement was negotiated after months of extensive investigation and arms-length negotiations by experienced and reputable counsel.  These factors demonstrate that the Settlement Agreement was not the product of fraud or collusion.  Moreover, attorneys' fees were not negotiated until after an agreement was reached. The negotiation of attorneys' fees did not affect, in any way, the injunctive relief negotiated for

the Settlement Class and it cannot be argued that any collusion existed between the parties with respect to any aspect of the Settlement Agreement.

### 4. *Continued Litigation Would Be Complex, Lengthy, and Uncertain.*

"In determining the fairness of the Settlement, courts also consider '[t]he complexity, expense and likely duration of the litigation.'" *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *4 (quoting *In re Telectronics*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). Class actions "'are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *Id*. "As such, avoiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *Id*.

This litigation has included extensive investigation by both parties and has raised several legal issues, including some unsettled areas of the law. A settlement at this stage avoids the substantial expense of formal discovery, motion practice, briefing on class certification, and an expensive trial–none of which will materially change the injunctive relief to the Settlement Class. In addition, Defendant possesses numerous affirmative defenses to these claims, meaning the time and effort required to litigate this matter through trial would be substantial. In contrast, the proposed Settlement Agreement provides Settlement Class Members with certainty that their personal health information and personally identifiable information will be restricted from public access. Moreover, that injunctive relief is being provided without having to endure the risks, effort, duration, and expense if this litigation continued.

### 5. *Opinions of Class Counsel and the Class Representatives.*

The court must also consider the experience of counsel and their views of the proposed settlement. *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F. Supp. 2d 521, 532 (E.D. Ky. 2010) ("In deciding whether a proposed settlement warrants approval, the informed and reasoned

judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference.").

Here, Class Counsel are experienced trial attorneys with expertise in privacy laws.  Class Counsel is experienced in both the litigation and settlement of class actions of this type, has conducted extensive investigation into the facts, and has thoroughly evaluated the merits of this case.  Given the experience of Class Counsel in this matter and in similar matters, their opinions that the terms of this settlement are fair, adequate, and reasonable should be given substantial weight in approving the Settlement Agreement.

> **6.      *The Strong Public Interest in the Amicable Resolution of Class Action Lawsuits Favors the Proposed Settlement***

"[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486 at *8 ("The proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources.").

> Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

Here, in light of provision of substantial benefits to the Settlement Class Members, this "overriding public interest" would be well-served by approval of the settlement.

## V.      PRELIMINARY APPROVAL OF REMEDIAL PLAN IS APPROPRIATE

The Settlement Agreement sets forth a remedial plan by which the Settlement Class will obtain the injunctive remedy that restricts public access to their information.  A nearly identical

plan was recently approved by this Court in a similar case involving another health care provider.

(S.D. Ohio Bankr. Case No. 3:15-bk-31896, Doc. 31).

In order to protect an individual, a bankruptcy court may exempt certain information filed

in a bankruptcy case from the general provision that all filed bankruptcy papers are public records.

11 U.S.C. § 107(c).  Specifically, the law provides:

> (1) The bankruptcy court, for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

> (A) Any means of identification (as defined in section 1028(d) of title 18) contained in a paper filed, or to be filed, in a case under this title.

> (B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c).

"Unlike § 107(b), § 107(c) gives the bankruptcy court broad discretion to protect an individual facing the subject circumstances. 2 *Collier on Bankruptcy* ¶ 107.04[1]. Moreover, '[t]he types of information that can be protected by the court are unlimited.' *Id.* (citing § 107(c)(1)(B))." *In re Khan*, No. BAP CC-13-1297-DPATA, 2013 WL 6645436, at *4 (B.A.P. 9th Cir. Dec. 17, 2013).  At least one federal circuit has determined that personal health information is a "means of identification" as defined in 11 U.S.C. §1028(d).  *United States v. Hall*, 704 F.3d 1317, 1321 & n.2 (11th Cir. 2013) (affirming sentence enhancement calculation for theft of personal health information based on 11 U.S.C. 1028(d)).  In addition, government agencies include medical information within the definition of personally identifiable information.  *See, e.g.,* Nat. Inst. of Standards and Tech., SP 800-122, *Guide to Protecting the Confidentiality of Personally Identifiable Information* 1, n.1, (May 19, 2008), *available at* http://csrcnist.gov/publications/nistpubs/800-122/sp800-122.pdf; U.S. Gov't Accountability Off.,

GAO-08-536, *Privacy: Alternatives Exist for Enhancing Protection of Personally Identifiable Information* ES-1-2, & n.6 (May 2008), *available at* http://www.gao.gov/new.items/d08536.pdf.

Rule 9037 of the Federal Rules of Bankruptcy Procedure supplements 11 U.S.C. § 107(c) by allowing the bankruptcy court to order certain documents filed in a bankruptcy case to be protected from public access. *1-12 Collier Bankruptcy Practice Guide* ¶ 12.08 [6]; *see also 10 Collier on Bankruptcy* ¶ 9037.01, .04, .05. Moreover, the Advisory Committee Note to Rule 9037 acknowledges the court's broad authority to protect in individual's private information: "[i]t may be necessary to protect information not covered by the redaction requirement . . . . In such cases, protection may be sought under subdivision (c) or (d)." F.R.B.P. 9037 Advisory Committee Note.

UC Health has investigated and identified all proofs of claim it filed in this Court with unredacted medical bills. The next step of the plan for remedial efforts requires UC Health to open a miscellaneous case in which it will request that this Court permanently restrict those proofs of claim, and thereafter fully and promptly comply with all orders of the Court regarding the filing of redacted proofs of claim in those restricted-access cases and to pay all costs and fees associated therewith. The law allows these remedial efforts, which will ensure that any Settlement Class Members' sensitive and personally identifying information will be restricted from public access, and which are efforts required to effectuate the Settlement Agreement terms. Therefore, they should be approved by this Court.

## VI.    APPROVAL OF NOTICE PLAN AND NOTICE IS APPROPRIATE

Rule 23(e) requires that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Notice is complete and sufficient for purposes of Rule 23(e) if it allows class members "a full and fair opportunity to consider the proposed settlement and to develop a response." *Dun & Bradstreet Credit Services*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). "The notice must be the best practicable, 'reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S.

797, 812, (1985); *see also Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008).   The notice

need not attach a copy of the settlement agreement; a general description of the settlement terms

will suffice.  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 759 (E.D.N.Y. 1984), *aff'd*

818 F.2d 145 (2d Cir. 1987).  The notice must state the options open to dissenting class members

and allow class members a reasonable time to object to the proposed settlement "to permit class

members to investigate and reflect on the matter before taking a position." *Id.*  Finally, the Court

must remain neutral and express no opinion on the merits of the settlement.  *Id.*

Here, the Notice, attached to Exhibit B to the Settlement Agreement, meets all the

requirements of Rule 23:  it identifies the Plaintiff and the Defendant; explains the lawsuit and the

Settlement Class in a straightforward manner; succinctly describes the essential terms of the

proposed Settlement Agreement; identifies all parties against whom claims are being released;

provides Settlement Class Members with information on how to object to the Settlement

Agreement and opt-out.  Moreover, notice of the incident has also already been sent to putative

class members under the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

## VII.    PLAINTIFF AND ITS COUNSEL SHOULD BE PRELIMINARILY APPROVED AS CLASS REPRESENTATIVE AND SETTLEMENT CLASS COUNSEL RESPECTIVELY

Rule 23(g)(1) requires that a court certifying a class appoint class counsel and that it must

consider the following in doing so:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).  In addition, class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4).

As previously shown, Class Counsel is experienced and knowledgeable of the applicable law and well qualified to represent the Settlement Class in this adversary proceeding. Further, following their retention by Hardy, they investigated and evaluated the Settlement Class's potential privacy claims prior to filing the Complaint.  Christian A. Jenkins and Paul J. Minnillo meet the requirements of Rule 23(g) and should be appointed as Class Counsel.  And as was previously shown, Hardy's interests are aligned with the Settlement Class Members; she will fairly and adequately protect the interests of the class, and she should be appointed as Class Representative.

## VIII.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL AND FAIRNESS HEARING

The Settlement Agreement is subject to preliminary approval and the Settlement Class should be conditionally certified. The Court therefore should set a final approval and fairness hearing to determine whether the Settlement Agreement and Settlement Class meet the applicable Rule 23 standards and direct that notice of same be sent to the Settlement Class Members.

## IX.   CONCLUSION

For the reasons set forth above, the Court should: (1) conditionally certify the Settlement Class under Rule 23(b)(2); (2) preliminarily approve the Settlement Agreement; (3) preliminarily approve the remedial plan; (4) approve the Notice Plan and the form, manner, content of the proposed Notice; (5) appoint Kelli R. Hardy as Class Representative and Christian A. Jenkins and Paul J. Minnillo of Minnillo & Jenkins Co., LPA as Class Counsel; and (6) schedule a final approval/fairness hearing under Rule 23.

WHEREFORE, the Parties request that the Court grant this Motion and enter a Preliminary

Approval Order that provides the following relief:

(1)    conditional certification of Settlement Class;

(2)    preliminary approval of the compromise reached among the Parties as set forth in the Settlement Agreement;

(3)    preliminary approval of remedial plan;

(4)    approval of Notice and Notice Plan, and opt out and objection deadlines;

(5)    appointment of Kelli R. Hardy as Class Representative and Christian A. Jenkins and Paul J. Minnillo of Minnillo & Jenkins Co., LPA Class Counsel; and

(6)    setting a date for a hearing on the fairness, reasonableness, and adequacy of the proposed settlement agreement pursuant to Rule 23(e).

Respectfully submitted,

/s/ Christian A. Jenkins                         /s/ Joseph M. Esmont
Christian A. Jenkins (0070674)          Joseph M. Esmont (0084322)
Paul J. Minnillo (0065744)               BAKER & HOSTETLER LLP
MINNILLO & JENKINS Co., LPA        Key Tower
2712 Observatory Avenue                  127 Public Square, Suite 2000
Cincinnati, Ohio 45208                     Cleveland, Ohio 44114
Tel:  (513) 723-1600                         Tel:  (216) 621-0200
Fax: (513) 723-1620                          Fax:  (216) 696-0740
cjenkins@minnillojenkins.com           jesmont@bakerlaw.com
pjminnillo@minnillojenkins.com

                                                        Counsel for UC Health, LLC
Class Counsel

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 26, 2019, the foregoing Joint Motion to Approve Settlement was

electronically filed with the Clerk of the United States Bankruptcy Court for the Southern District

of Ohio using the Court's CM/ECF system, which will automatically serve all counsel of record

via electronically delivery.


/s/ Christian A. Jenkins
Christian A. Jenkins (0070674)

21223062.1